Steven E. Shapiro, (SBN 120200)
sshapiro@ksplr.com
Stella K. Park (SBN 152659)
spark@ksplr.com
**KIM, SHAPIRO, PARK, LEE & RYU, APLC**
3435 Wilshire Blvd., Suite 2050
Los Angeles, CA  90010
Telephone: 213-380-9200
Facsimile:  213-380-9302

S. Young Lim (SBN 126679)
young@parkandlim.com
**PARK & LIM**
3435 Wilshire Boulevard, Suite 2920
Los Angeles, California 90010
Telephone: 213-386-5595
Facsimile:  213-384-7110

Attorneys for Plaintiff
HANA FINANCIAL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HANA FINANCIAL, INC., a California corporation,,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>HANA BANK, a Korean corporation, HANA FINANCIAL GROUP, a Korean corporation,,<br><br>　　　　　Defendant. | **Case No.  CV07-1534-PA(JWJx)**<br><br>**PLAINTIFF HANA FINANCIAL'S TRIAL BRIEF**<br><br>**Judge:　Hon. Percy Anderson**<br>**Trial :　May 17, 2011** |

1

# INTRODUCTION

This is a trademark infringement suit brought by Hana Financial, Inc. ("Hana Financial") against Defendants Hana Bank and Hana Financial Group (collectively "Hana Bank"). Hana Bank is willfully infringing Hana Financial's registered trademark HANA FINANCIAL with logo. More specifically, Hana Bank conducts business in United States commerce using the infringing marks HANA BANK and HANA FINANCIAL GROUP.

# THE PARTIES

Hana Financial is based in Los Angeles. It has provided financial services since 1995. Hana Financial owns a U.S. trademark registration for HANA FINANCIAL with a pyramid logo, which was filed in 1995 and issued in 1996. Since its 1994 incorporation, Hana Financial has built its HANA FINANCIAL brand through hard work and excellent service. Hana Financial is the 13th largest provider of SBA loans in the U.S. and the third-largest factor on the West Coast.

Hana Bank is a Korean banking company based in Seoul. Hana Bank began providing banking services in the U.S. under the mark HANA BANK in December of 2002. Prior to that date, Hana Bank did not have a U.S. banking license. It is the third largest Korean bank. Hana Financial Group is a holding company and is the parent of Hana Bank.

# HANA FINANCIAL'S CASE IN CHIEF

Hana Financial must prove each of the following elements: (1) the HANA FINANCIAL with logo mark is a valid, protectable trademark owned by Hana Financial; (2) the defendants used the HANA BANK mark in the U.S. without consent in a manner likely to cause confusion among ordinary purchasers as to the source, sponsorship, affiliation, or approval of the goods or services; and (4) Hana Financial was damaged by Hana Bank's infringement.

Hana Financial's case in chief will be simple and straightforward.  Hana Financial's United States trademark registration on the mark HANA FINANCIAL with design establishes Hana Financial's ownership of a valid and protectable trademark.

Hana Bank will only lose credibility by insisting that its use of HANA BANK for financial services is not likely to cause customer confusion as to whether Hana Financial and Hana Bank are associated.  All of the factors that the jury will consider on this issue (*see*, *generally*, *AMF, Inc. v. Sleekcraft Boats*, 599 F. 2d 341, 348-354 9th Cir. 1979) favor a confusion finding:

**1. The HANA FINANCIAL Mark is Strong.**  "Hana" applied to financial services is arbitrary and inherently strong.  Hana Financial has used the HANA FINANCIAL mark for more than 15 years and continues to expand its customer base and its operations.  Since it commenced operations in Los Angeles, it has opened up offices in New York City and the Pacific Northwest and is one of the largest factors and providers of SBA loans in the U.S.  Hana Financial has engaged in extensive marketing and advertising to build up its brand.

**2. The Marks At Issue Are Virtually Identical.**  Although marks are compared in their entireties, the dominant feature of the marks here is HANA. The word "bank" is understood by consumers to be a "financial" institution, so substituting "bank" for "financial" only adds to the confusion.  Hana Financial's consumer survey demonstrates that two-thirds of people who see the marks falsely believe that Hana Financial is affiliated with Hana Bank.

**3.  Both Parties Provide The Same Types of Services.**  Both parties use their respective marks for the same services such as trade financing.  To the extent that the services are not identical, a likelihood of confusion still exists. *See*, 9th Cir. Model Jury Instruction 18.15 ("If the defendants and plaintiff use their trademarks on the same, ***related, or complementary kinds of goods*** there

may be a greater likelihood of confusion about the source of the goods than otherwise.").

**4. There Is Actual Confusion Between The Marks.**  "If use by the defendant of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion." *Id.*  Here, Hana Financial has documented actual confusion by its customers who inquire about the affiliation between Hana Financial and Hana Bank.  The chairman of Hana Bank has also testified to the existence of actual confusion.

**5. The Parties Use Similar Marketing Channels.**  The parties both market their services using the Internet, magazines, newspapers, and television.

**6. Potential Customers Are Not Likely To Exercise A High Degree Of Care.**  Hana Financial's potential customers are not likely to exercise a high degree of care in deciding whether Hana Financial and Hana Bank are affiliated.

**7. The Parties Are Likely to Expand into Each Other's Product Lines.**  Although Hana Financial initially focused on providing financial services to small and medium-sized companies, it has been expanding its services to consumers.  Hana Bank has historically provided financial services to consumers.

**8. Defendants Are Using Their Marks In Bad Faith And With Knowledge Of Hana Financial's Prior Rights.**  "Knowing use by defendants of the plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiffs mark, suggesting an intent to cause a likelihood of confusion." *Id.*  Hana Bank was aware of Hana Financial's trademark registration before the infringement.

With respect to damages, Hana Financial will seek a disgorgement of profits generated by the Hana Bank New York Agency in commerce.  *See*, 15 U.S.C. § 1127 ("The word "commerce" means all commerce which may lawfully be regulated by

Congress."), corrective advertising and actual damages. Whether or not the jury finds damages, so long as the other liability elements are determined in Hana Financial's favor, Hana Financial will be entitled to an injunction.

In addition, Hana Financial will prove that Hana Bank is an intentional infringer. Hana Bank admits that it was aware of Hana Financial as early as 1995. Further, in 2001, Hana Bank filed a US trademark application on HANA BANK that was rejected based on Hana Financial's earlier trademark registration on HANA FINANCIAL. Hana Bank contacted Hana Financial seeking its consent to do business in the United States under the HANA BANK mark. Hana Financial refused consent, expecting that Hana Bank would not use the HANA BANK mark without consent. Several years later, Hana Financial learned that Hana Bank had gone behind its back and started doing business under the infringing mark HANA BANK in New York City.

## HANA BANK'S AFFIRMATIVE DEFENSES

Hana Bank's affirmative defenses are utterly without merit and will not be provable at trial. Hana Bank's primary defense is that it has US trademark rights superior to Hana Financial's. It is also asserting five equitable affirmative defenses.

### A. Priority.

Hana Bank's "priority" contention will fail for several reasons. First, Hana Bank cannot "tack" on its alleged use of HANA OVERSEAS KOREAN CLUB to its later use of HANA BANK. Second, Hana Bank cannot prove that it provided services in the U.S. under the HANA OVERSEAS KOREAN CLUB mark prior to April 1, 1995, the date that Hana Financial commenced its operations. Third, Hana Bank abandoned the HANA OVERSEAS KOREAN CLUB three years before it commenced its infringing use of HANA BANK in the U.S.

It is clear that Hana Bank cannot "tack" on its alleged use of HANA OVERSEAS KOREAN CLUB to its later use of HANA BANK. Based on settled Ninth Circuit law, evidence relating to the HANA OVERSEAS KOREAN CLUB is

5

irrelevant to this case.  Hana Financial has filed a motion in limine to exclude the HANA OVERSEAS KOREAN CLUB evidence, which should prevail.

Under settled law, the use of two marks may be tacked, for purposes of seniority, only when those marks are ***"virtually identical"*** and create the ***"same overall commercial impression"***.  *One Industries v. Jim O'Neal Distributing*, 578 F.3d 1154, 1161 (9th Cir. 2009); *Brookfield Communications v. West Coast Entertainment*, 174 F. 3d 1036, 1047-48 (9th Cir. 1999); *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 1159 (Fed. Cir. 1991).  The marks HANA BANK and HANA OVERSEAS KOREAN CLUB fall far short from meeting that test.  For purposes of continuity, two marks may be tacked only where they "create the same commercial impression, and the later mark must not be materially different from or alter the character of the earlier mark." *Brookfield*, 174 F.3d at 1048.  Due to this high standard, tacking should be permitted "*only in rare circumstances*." *Brookfield*, 174 F.3d at 1047-48.  Hana Bank's alleged use of the composite mark HANA OVERSEAS KOREAN CLUB is legally irrelevant to the issue of seniority because for trademark purposes, it is entirely different from the mark HANA BANK.  Manifestly, the mark HANA OVERSEAS KOREAN CLUB does not convey the same commercial impression as, and differs materially from, the mark HANA BANK.  For one, when viewed in their entirety the marks are clearly different.  Furthermore, the mark HANA OVERSEAS KOREAN CLUB conveys the limited impression of an exclusive social organization for Korean expatriates, whereas the mark HANA BANK suggests something completely different.  HANA BANK suggests an establishment that receives, keeps, and lends money.

At the same time, Hana Bank has not produced a single document that shows it performed services in the U.S. before Hana Financial commenced its commercial operations.  *See*, 15 U.S.C. § 1127 ("a mark shall be deemed to be in use in commerce … on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one

State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services."). Further, Hana Bank abandoned the mark HANA OVERSEAS KOREAN CLUB in 2000. *See*, 15 U.S.C. § 1127 ("A mark shall be deemed to be 'abandoned' if … its use has been discontinued with intent not to resume such use."). HANA BANK and HANA OVERSEAS KOREAN CLUB cannot be tacked for that additional reason.

### B. Unclean Hands.

Hana Bank's unclean hands affirmative defense is based entirely upon a supposed conversation that took place between Charles Kim (a Hana Financial co-founder) and Seung-Yu Kim (current CEO of Hana Financial Group) in 1995. In granting Hana Financial summary judgment on the defendants' counterclaim, this Court correctly found that Seung-Yu Kim's testimony was insufficient to establish Hana Financial knew of the defendants' alleged superior rights in the name HANA. This finding, which was upheld by the Ninth Circuit, is the law of the case. *See*, *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988) ("[A] court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case."). This finding has eviscerated the defendants' unclean hands defense because they cannot now demonstrate that Hana Financial acted in bad faith. *See*, *Dollar Systems v. Avcar Leasing*, 890 F. 2d 165, 173 (9th Cir. 1989) ("Bad intent is the essence of the defense of unclean hands."); *Citizens Fin. Group v. Citizens Nat'l Bank*, 383 F.3d 110, 129 (3d Cir. 2004) (in trademark cases "courts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands."). If this Court does not apply the law of the case doctrine, the result will be the same because Seung-Yu Kim is locked in by his deposition testimony.

In addition, there is not a single document that supports Seung-Yu Kim's assertions that the conversation took place or Hana Bank relied on Charles Kim's alleged statements. There is no document confirming or referencing the conversation

whatsoever. Seung-Yu Kim also testified that after the conversation he gave orders to the Hana Bank communications team "to follow up on the matter". However, the head of the communications team, Gi-Hong Kim, could not remember any such orders. In fact, the documentary evidence supports a finding that the alleged conversation did not take place at all. The parties have been in communication over the years, but nothing was ever mentioned about the alleged conversation. For example, when Hana Bank's 2001 trademark application was rejected and Hana Bank sought Hana Financial to obtain consent to registration, nothing was mentioned about the alleged prior conversation. In addition, Hana Bank's current litigation counsel wrote Hana Financial in December 2005 suggesting a coexistence agreement, but did not mention the alleged conversation. Instead, the letter falsely claimed that Hana Bank had just learned of Hana Financial's trademark registration. In short, Hana Bank never mentioned the conversation until after this lawsuit was commenced.

Finally, if the jury finds for Hana Financial on trademark priority, the defendants cannot prove that they were misled into compromising alleged U.S. trademark rights. They would not have had trademark rights to compromise in the first place. Accordingly, if Hana Financial wins on the issue of priority, the unclean hands defense must be dismissed because the defendants could not have been harmed by the purported misconduct. *See*, *Rodeway Inns Intern. v. Amar Enterprises*, 742 F. Supp. 365, 367-68 (S.D. Miss. 1990) (in trademark infringement case, "the defendant must show injury as a result of the misconduct."); *Petro Franchise Systems v. All American Properties*, 607 F. Supp. 2d 781, 799 (W.D. Tex. 2009) (same); *Metro-Goldwyn-Mayer Studios. v. Grokster*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007) (same).

### C. Laches.

Hana Bank cannot establish laches. Hana Financial did not become aware of Hana Bank's infringing use of the HANA BANK mark until after it received the co-existence letter from Hana Bank's current counsel at the end of 2005. Efforts were

made to resolve the situation with Hana Bank.  However, when Hana Bank announced that it was going to open retail banking operations in Los Angeles, the lawsuit was filed.

### D.  Trademark Misuse.

Although trademark misuse can occur when a trademark is used as part of an antitrust violation, Hana Bank has not brought an antitrust claim.  All Hana Bank has done in its proposed jury instruction is restate, albeit incompletely, the sham exception to the *Noerr-Pennington* doctrine.  Hana Bank's cited case authority in support of this affirmative defense, *PrimeTime 24 Joint Venture v. National Broadcasting Co.*, 219 F.3d 92 (2d Cir. 2000), is not a trademark case, but is an antitrust case.

### E.  Waiver and Equitable Estoppel.

"[W]aiver is the ***intentional*** relinquishment or abandonment of a ***known*** right". *Kontrick v. Ryan*, 540 U.S. 443, 458 (U.S. 2004) (emphasis supplied).  Hana Bank does not have clear and convincing evidence that Hana Financial waived any right to enforce its trademark.  Hana Bank's equitable estoppel affirmative defense will fail for the same reason.

Respectfully submitted,

Date:  May 11, 2011

                      Kim, Shapiro, Park, Lee & Ryu, APLC

                      By: */S/ STEVEN E. SHAPIRO*
                           Steven E. Shapiro
                           Attorneys for Plaintiff