UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANA FINANCIAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> HANA BANK and HANA FINANCIAL GROUP, <br><br> Defendants. | CV 07-1534 PA(JWJx) <br><br> FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This case involves a trademark dispute between two financial services companies. Plaintiff Hana Financial, Inc. ("Hana Financial") commenced this action in 2007 against defendants Hana Bank and Hana Financial Group (collectively "Hana Bank"). Hana Financial's Complaint alleged claims for: (1) trademark infringement under 15 U.S.C. § 1114(a) of the Lanham Act; (2) trademark infringement under 15 U.S.C. § 1125(a) of the Lanham Act; (3) false designation of origin under 15 U.S.C. § 1125(a) of the Lanham Act; (4) common law trademark infringement under federal law; and (5) unfair competition under California common law and California Business and Professions Code section 17200. Hana Bank filed a Counterclaim seeking cancellation of Hana Financial's federal trademark registration.

The parties filed cross-motions for summary judgment. In a January 7, 2008 Minute Order, this Court concluded that Hana Financial was entitled to a Judgment on Hana Bank's Counterclaim. The Court further concluded that Hana Financial's first use in commerce of its "Hana" mark occurred on April 1, 1995, and that Hana Bank's use of its mark in commerce in the United States predated Hana Financial's first use of its mark. On appeal, the Ninth Circuit affirmed this Court's rulings with respect to Hana Bank's Counterclaim and Hana Financial's date of first use of its mark,[1] but found triable issues of fact concerning Hana Bank's first use of its mark in commerce in the United States. The Ninth Circuit therefore remanded the action for trial.

With the exception of Hana Financial's claim brought pursuant to California Business and Professions Code section 17200, which sought only equitable relief and was therefore triable to the Court, the parties submitted Hana Financial's Lanham Act and federal common law trademark infringement claims to the jury. The Court also submitted Hana Bank's equitable defenses of unclean hands and laches to the jury for an advisory verdict. Following the presentation of evidence, the Court granted defendant Hana Financial Group's Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50. The basis for that decision was stated on the record and is further supported by these Findings of Fact and Conclusions of Law. The jury proceeded to deliberate on Hana Financial's remaining claims against Hana Bank and Hana Bank's two equitable affirmative defenses.

The jury returned a unanimous verdict holding that Hana Bank had used its mark in commerce in the United States prior to April 1, 1995 and continuously since that date. As a result of the jury's finding, Hana Bank is the senior user of the mark and cannot be liable to Hana Financial for trademark infringement. The jury also returned advisory verdicts on Hana Bank's equitable affirmative defenses. Specifically, the jury found that Hana Bank had proven its laches defense but not its unclean hands defense. Pursuant to Federal Rule of

---

[1] The Ninth Circuit's affirmance of the April 1, 1995 date of first use for Hana Financial renders that fact law of the case.

-2-

Civil Procedure 52, the Court then directed the parties to submit proposed Findings of Fact and Conclusions of Law on Hana Financial's California Business and Professions Code section 17200 claim and on Hana Bank's equitable affirmative defenses. Having considered the materials submitted by the parties and reviewing the evidence elicited at trial, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a):

**I.      Findings of Fact**

      **A.      Defendant Hana Bank**

          1.      Defendant Hana Bank was originally established in 1971 as Korea Investment Finance Corporation, and changed its name to Hana Bank in 1991.

          2.      Hana Bank is the fourth largest financial institution in the Republic of Korea.

          3.      In May of 1994, Hana Bank established a service called the Hana Overseas Korean Club to provide financial services in the nature of foreign exchange, wire transfer and asset management services to Korean expatriates living abroad, including in the United States.

          4.      On July 12, 1994, Hana Overseas Korean Club services became available to customers living in the United States.

          5.      In July 1994, Hana Bank launched a domestic advertising campaign for the Hana Overseas Korean Club.

          6.      On July 13, 1994, Hana Bank published an advertisement for its Hana Overseas Korean Club in the Washington, D.C. Edition of the Korea Times.

          7.      On July 14, 1994, Hana Bank published advertisements for its Hana Overseas Korean Club in the Los Angeles and San Francisco Editions of the Korea Times.

          8.      Hana Bank's July 1994 advertisements displayed the name HANA in English.

          9.      Hana Bank's July 1994 advertisements also displayed the name Hana Bank in Korean.

1        10.    Following the advertising launch, on July 18, 1994, Hana Bank received separate letters from California residents in Granada Hills and Los Angeles, both inquiring about Hana Bank's Overseas Korean Club services.

       11.    On August 5, 1994, Hana Bank received an application for its Hana Overseas Korean Club from a customer in New York. Hana Bank approved this application, and the New York applicant has remained a customer of Hana Bank from 1994 through the present.

       12.    On October 7, 1994, Hana Bank received an application for its Hana Overseas Korean Club from a customer in New Jersey. Hana Bank approved this application, and the New Jersey applicant remained a customer of Hana Bank from 1994 until 2000.

       13.    On December 5, 1994, Hana Bank received an application for its Hana Overseas Korean Club from a customer in California. Hana Bank approved this application, and the California applicant remained a customer of Hana Bank from 1994 until 1998.

       14.    Hana Bank changed the name of its Hana Overseas Korean Club to the Hana World Center in or about 2000.

       15.    Between 1994 and the present, Hana Bank has continuously provided financial services to customers in the United States.

       16.    From 2002 through the present, Hana Bank has also operated a state-licensed agency in New York City under the name Hana Bank.

       17.    In 2002, Hana Bank merged with Seoul Bank, another large Korean bank.

       18.    Prior to its merger with Hana Bank, Seoul Bank used the following logo (the "Seoul Bank Mark"):



### B. Defendant Hana Financial Group

19. Defendant Hana Financial Group was incorporated in Korea on December 31, 2005 as the financial holding company of Hana Bank, pursuant to the Korean Financial Holding Company Act.

20. Hana Financial Group does not provide any financial services in the United States.

21. Hana Financial Group has never used a HANA mark in connection with the provision of any financial services in the United States.

22. Hana Financial Group does not direct the activities of Hana Bank in the United States.

### C. Plaintiff Hana Financial, Inc.

23. Plaintiff Hana Financial, Inc. ("Hana Financial") is a privately held California corporation headquartered in Los Angeles.

24. Hana Financial was incorporated on August 15, 1994.

25. On July 16, 1996, Hana Financial obtained a federal trademark registration for the following HANA FINANCIAL logo (the "Hana Financial Mark") in connection with "financial services, namely factoring services, asset-based lending, equipment lease financing, international trade financing, real estate financing, and investment consulting services":

Hana Financial

26. Hana Financial's trademark registration represents that Hana Financial first used the Hana Financial Mark in commerce in connection with the recited services on April 1, 1995.

27. As the Court determined in its January 7, 2008 Minute Order on the parties' cross-motions for summary judgment, and as affirmed by the Ninth Circuit on appeal, Hana Financial did not use the Hana Financial Mark in commerce prior to April 1, 1995.

28. Hana Financial was aware of Hana Bank before Hana Financial used the Hana Financial Mark.

29. Hana Financial was aware of the Seoul Bank Mark before Hana Financial used the Hana Financial Mark.

30. Hana Bank's Chairman Seoung-Yu Kim and Hana Financial's former CEO Charles Kim knew each other since 1985, and met on an annual basis between 1985 and 2002.

31. Hana Financial's current CEO Sunnie Kim has known Hana Bank's Chairman Seoung-Yu Kim for several decades.

32. Hana Bank's Chairman Seoung-Yu Kim and Hana Financial's current CEO Sunnie Kim also met on an annual basis between 2004 and 2006.

33. Sunnie Kim and Charles Kim met with Hana Bank representatives in 1991, while they were employed with California Center Bank in Los Angeles, to discuss a potential equity investment by Hana Bank.

34. In 1995, shortly after Hana Financial was established, Charles Kim met with Hana Bank's Chairman Seoung-Yu Kim in Seoul, Korea.

35. During this 1995 meeting, Charles Kim presented to Chairman Seoung-Yu Kim a copy of his business card bearing the Hana Financial Mark. When Hana Bank's Chairman asked him why he was using the "Hana" name without Hana Bank's permission, Charles Kim reassured him that there would be no overlap in the companies' service offerings because Hana Financial only engaged in factoring and would not provide banking services.

//
//
//

## II. PROPOSED CONCLUSIONS OF LAW

### A. Dismissal of Cal. Bus. & Prof. Code § 17200 Claim

36. To prevail on its claim under California Business and Professions Code section 17200, Hana Financial must show that the defendants have engaged in an unlawful, unfair or fraudulent business act or practice, and that such conduct has caused injury to Hana Financial. Cal. Bus. & Prof. Code § 17200.

37. Because Hana Financial's section 17200 claim is premised on a theory of infringement, the section 17200 claim rises or falls with the success of the infringement theory. See CreAgri, Inc. v. USANA Health Sciences, Inc., 474 F.3d 626, 630 n.8 (9th Cir. 2007); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988); Int'l Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 916 (9th Cir. 1980) ("[F]ederal and state laws regarding trademarks and related claims of unfair competition are substantially congruent.")

38. Hana Financial's infringement claims fail and, by extension, its section 17200 also fails, because Hana Bank has trademark priority in the United States. Brookfield Comm., Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1047 (9th Cir. 1999) (general rule is that "[t]he first to use a mark [in commerce] is deemed the 'senior user' of that mark.").

### B. Finding of Laches

39. The equitable defense of estoppel by laches bars relief where the defendant can show unreasonable delay in bringing suit plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay. Transworld Airlines v. American Coupon Exchange, 913 F.2d 676, 696 (9th Cir. 1990).

40. Hana Financial's causes of action are barred by the doctrine of laches because:
    (a) Hana Financial's founding principals have a long history of dealings with Hana Bank, including business discussions in 1991 concerning a potential equity investment by Hana Bank in a U.S. bank;

(b) In July 1994, Hana Bank openly advertised its services in popular Korean-American publications, including the Los Angeles Edition of the Korea Times, in which Hana Financial has also advertised;

(c) for several decades Hana Financial's founding principals have had regular contact with Hana Bank's Chairman Seoung-Yu Kim, including annual visits between Hana Financial's Charles Kim and Hana Bank's Seoung-Yu Kim between 1985 and 2002, and annual visits between Hana Financial's Sunnie Kim and Hana Bank's Seoung-Yu Kim between 2004 and 2006;

(d) at a meeting in 1995 between Hana Financial's Charles Kim and Hana Bank's Seoung-Yu Kim, Charles Kim signaled acquiescence to Hana Bank's U.S. trademark rights when Hana Bank's Chairman asked him why he was using the "Hana" name without Hana Bank's permission, and Charles Kim reassured him that there would be no overlap in the companies' service offerings because Hana Financial only engaged in factoring and would not provide banking services;

(e) Hana Financial unreasonably delayed in bringing suit after it knew of Hana Bank's U.S. trademark activities; and

(f) Hana Bank and Hana Financial Group have been prejudiced by Hana Financial's delay by continuing to build its domestic presence following Charles Kim's 1995 reassurances.

41. The jury, in its advisory capacity, found that Hana Bank had proven that it was entitled to its laches defense. For the reasons stated above, the Court adopts the jury's finding and concludes that Hana Bank's laches defense precludes Hana Financial's claims.

**C. Finding of Unclean Hands**

42. The equitable defense of unclean hands bars relief where the plaintiff has engaged in unfair or inequitable conduct, and such conduct is related to the subject matter of the plaintiffs' claims in the case. Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d

-8-

837, 847 (9th Cir. 1987); Japan Telecom, Inc. v. Japan Telecom Am., Inc., 287 F.3d 866, 870 (9th Cir. 2002) (the doctrine of unclean hands applies to Lanham Act claims).

43.     The doctrine of unclean hands bars Hana Financial's claims in this action due to Hana Financial's reassurance to Hana Bank in 1995 that there would be no overlap in the companies' service offerings because Hana Financial only engaged in factoring and would not provide banking services.

44.     The doctrine of unclean hands also bars Hana Financial's claims in this action because Hana Financial knowingly designed its Hana Financial Mark based upon two pre-existing and well-known Korean financial brands, combining the name of Hana Bank with the pyramid logo of Seoul Bank. As a result, Hana Financial seeks to impose liability on Hana Bank for infringing on its intellectual property when it has infringed on Hana Bank's intellectual property rights. Hana Financial's conduct was unfair and inequitable and related to the subject matter of Hana Financial's claims in this action.

45.     Although the jury, in its advisory capacity, found that Hana Bank had not proven that it was entitled to its unclean hands defense, the Court, for the reasons stated above, rejects the jury's finding and concludes that Hana Bank's unclean hands defense precludes Hana Financial's claims.

### D.     Non-Infringement By Defendant Hana Financial Group

46.     Hana Financial Group cannot be held liable for trademark infringement because it has not been shown to have used any "Hana" mark in U.S. commerce. See Bosley Medical Institute v. Kremer, 403 F.3d 672, 676-77 (9th Cir. 2005) ("infringement law prevents only unauthorized use of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers").

47.     Hana Financial Group also cannot be held derivatively liable for the conduct of Hana Bank simply because it is in a parent-subsidiary relationship with the bank. United States v. BestFoods, 524 U.S. 51, 61, 118 S. Ct. 1876, 1884, 141 L. Ed. 2d 43 (1998) ("[I]t is a general principle of corporate law . . . that a parent corporation . . . is not liable for the acts of its subsidiaries.").

**CONCLUSION**

As a result of the jury's finding that Hana Bank was the senior user of its mark, and these Findings of Fact and Conclusions of Law, defendants Hana Bank and Hana Financial Group are entitled to judgment on all of plaintiff Hana Financial, Inc.'s claims. Accordingly, the Court will enter judgment in favor of Hana Bank and Hana Financial Group.

IT IS SO ORDERED.

DATED: June 29, 2011  _____
Percy Anderson
UNITED STATES DISTRICT JUDGE